```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


JPS ELASTOMERICS CORP.,          )
        Plaintiff                )
                                 )
             v.                  )   C.A. No. 10-cv-11142-MAP
                                 )
SPECIALIZED TECHNOLOGY           )
RESOURCES, INC.                  )
        Defendant                )
```

                MEMORANDUM AND ORDER REGARDING
                 DEFENDANT'S MOTION TO DISMISS
                     AND MOTION TO STRIKE
                      (Dkt. Nos. 17 & 14)

                        January 14, 2011

PONSOR, U.S.D.J.

This is an odd case. Plaintiff, who (in the role of defendant) is losing badly in state court, charges in this federal court complaint that the disastrous state court litigation is a "sham." It seeks, to a substantial degree, the same remedies against Defendant here (plaintiff in state court) that the state court judge has denied it. Some background will help to shed light on this unusual situation and to illuminate the court's rationale for its ruling dismissing the complaint.

Defendant Specialized Technology Resources, Inc. ("STR") is a manufacturer of polymeric sheeting, a product made out of ethylene vinyl acetate ("EVA"). One of its products is a specialized line of "User-Friendly" or "UF"

EVA. STR claims to possess a trade secret covering the production process for this specialized product. In October of 2007, STR brought a lawsuit against Plaintiff in this case, JPS Elastomerics Corporation ("JPS"), in state court.

In August 2008, after a three-week trial, a jury determined that STR did in fact possess a trade secret in its process for manufacturing UF EVA and that an executive of JPS by the name of Galica had breached a non-disclosure agreement relating to this process that he had entered into when he was employed by STR. The jury found that STR failed to prove that Galica and JPS had misappropriated that trade secret. However, the state Superior Court Judge, reserving for herself a finding on the claim under Mass. Gen. Laws ch. 93A (as the statute permits), concluded that both Galica and JPS had misappropriated STR's trade secrets.

The Superior Court Judge's findings were emphatic, holding that JPS had engaged in "pernicious wrongdoing," and that Galica had demonstrated a "willingness to lie under oath." (See Dkt. No. 19, Ex. A at 43, 15.) The State Superior Court awarded STR treble damages and attorney's fees against JPS and enjoined Galica and JPS from manufacturing products through the use or disclosure of STR's trade secret. (Id. at 43-44.)

The precise outline of the injunctive relief to be

issued in the state court has been a matter of protracted litigation, including an appeal, and the Superior Court has still not issued a final order on this issue. In other words, the state court litigation between STR and JPS is still pending.

Against this backdrop, JPS, on July 7, 2010, filed a parallel complaint before this court in six counts, alleging that STR's state court lawsuit, although successful, constituted "sham litigation" exhibiting an intent to monopolize in violation of 15 U.S.C. § 2. This "sham litigation" allegation animated most of the first four counts of JPS's complaint in this court. JPS also alleged unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, and violation of Mass. Gen. Laws ch. 93A.

Defendant STR has moved to dismiss Plaintiff's complaint on the ground that it failed to state a claim as a matter of law. After hearing oral argument, the court indicated that it would be allowing the motion forthwith and set forth its reasons orally. The court's rationale may be summarized as follows.

The institution of this litigation constitutes an egregious misuse of the "sham litigation" theory of recovery. The law is well established under the so-called Noerr-Pennington doctrine that a party who files a lawsuit

or otherwise petitions the government for redress is generally immune from antitrust liability unless such litigation or activity is a "sham."  Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56-60 (1993) (discussing Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965)).  To be a "sham," the litigation (1) must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits;" and (2) must "conceal[ ] an attempt to interfere directly with the business relationships of a competitor."  Id. at 60-61.

By no stretch could the litigation that STR brought in state Superior Court constitute the kind of "sham" that would take it outside the protection of the Noerr-Pennington doctrine.  Most significantly, the state court litigation was triumphantly successful, both before the jury and before the judge.  The piquancy of the Superior Court's remarks makes it clear that the evidence, in the court's view at least, was not even close.  In fact, the court stated that the "credible evidence overwhelmingly proved" that JPS had misappropriated STR's trade secrets.  (Dkt. No. 19, Ex. A at

34, 43.) The Supreme Court has stated that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." Prof'l Real Estate, 508 U.S. at 61 n.5. Considering STR's success in state court in light of this refreshingly clear guidance from the Supreme Court, the decision to bring this suit is puzzling.

Plaintiff argues that the judgment was procured by the use of fraud, thus making it invalid. However, even assuming arguendo that this theory creates a viable exception to the Supreme Court's articulation above, nothing in the factual allegations of this complaint, putting aside self-serving rhetoric, even begins to put Defendant's state court litigation on that level of malfeasance. Indeed, the allegations in this federal complaint make it clear that Plaintiff's only evidence of "fraud" is a recapitulation of essentially the same arguments it made in state court, which were rejected there.[1] A litigant is not permitted, in the

---

[1] Specifically, Plaintiff alleges that Defendant falsely represented to the Superior Court that UF EVA was a protected trade secret when, in reality, it knew that one of its manufacturers had been publicly displaying and marketing UF EVA overseas. Plaintiff raised these concerns before the Superior Court in July 2010, and the court flatly rejected them, stating that Plaintiff was simply attempting "to relitigate before this court that which this court has already decided" and "to mount yet another legal attack on the court's findings and rulings." (Dkt. No. 17, Ex. M).

face of a loss in state court, to repeat the same basic allegations, gussied up now as evidence of a supposed "sham," and obtain a re-do in federal court.

Once the "sham litigation" allegations are excised from the complaint as baseless, nothing remains to support any claim of an antitrust violation as offered in Counts I-IV. The complaint simply does not contain "sufficient factual matter" to state a claim for relief that is both actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009)(quoting Bell Atlantic Corp. v. Twombly, 540 U.S. 544, 570 (2007)). Any claim under the Lanham Act, 15 U.S.C. § 1125, must be dismissed since Plaintiff has failed to allege commercial advertising and, in any event, the supposedly actionable comment (a single e-mail) was merely an expression of opinion.[2] Plaintiff does not provide an independent basis for Count VI under Chapter 93A, and, therefore, the collapse of the antitrust and Lanham Act claims is fatal to this claim as well.

---

[2] The email advises a customer not to consider a product "made with STR's stolen IP" and immediately thereafter cautions the customer that "I can only say that we have good cause to believe that Jim and his new company, JPS, misappropriated our technology, as we have not yet proven that in a courtroom." (Dkt. No. 26, Ex. E.) This statement cannot form the basis for a claim under the Lanham Act.

In sum, if there is any "sham" in this litigation, it is contained in the complaint brought before this court. For this reason, Defendant's Motion to Dismiss (Dkt. No. 17) is hereby ALLOWED.  Defendant Motion to Strike (Dkt. No. 14) is hereby DENIED, as moot.  The clerk is ordered to enter judgment for Defendant.  This case may now be closed.

It is So Ordered.

                                          <u>/s/ Michael A. Ponsor</u>
                                          MICHAEL A. PONSOR
                                          U. S. District Judge